# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAH KEYES,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 19-cv-00345-YGR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 36 |

Plaintiff Allah Keyes brings this action seeking judicial review of a final decision of the Commissioner of Social Security terminating his previously granted Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Currently pending before the Court are the parties' cross-motions for summary judgment. Having carefully considered the parties' submissions, and for the reasons stated below, the Court **GRANTS** the plaintiff's motion, **DENIES** the defendant's motion, and **REMANDS** for further proceedings.

## I. BACKGROUND

Plaintiff filed an application for SSI on May 8, 2007, alleging that he had been disabled since April 1, 2007. (Administrative Record ("AR"), Dkt. No. 11, at 211–16.) The parties do not dispute that plaintiff was found to be disabled and awarded benefits in a decision dated September 24, 2007.[1] Plaintiff's disability was subsequently determined to have continued in a determination dated August 15, 2012. (*Id.* at 98–100.)[2] However, on May 23, 2016, the Social Security Administration ("SSA") determined that plaintiff was no longer disabled. (*Id.* at 101–05.) This

---

[1] Although this fact is not disputed by the parties, the administrative record does not contain this decision.

[2] This determination followed an earlier unfavorable determination dated May 7, 2012, for which plaintiff sought reconsideration. (AR at 94–97.)

determination was upheld upon reconsideration by a state agency disability hearing officer in a decision dated December 19, 2016. (*Id.* at 118–32.)

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which was held on December 12, 2017, before ALJ Robert Milton Erickson. (*Id.* at 31–68, 139.) Plaintiff had non-attorney Jolene Gray at the hearing. (*Id.* at 33.) The ALJ heard testimony from plaintiff, a vocational expert, and a medical expert. (*Id.* at 32.) On February 12, 2018, the ALJ issued a decision finding that plaintiff was no longer disabled under section 1614(a)(3)(A) of the Act. (*Id.* at 12–30.) Plaintiff's request for Appeals Council review was denied on November 15, 2018, rendering the ALJ's decision as the final decision of the Commissioner. (*Id.* at 1–6.)

## II. LEGAL FRAMEWORK

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g) (district courts may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"). A decision denying disability benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation marks omitted).

An individual is disabled for the purpose of receiving benefits under the Act if he demonstrates a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity that is expected to result in death or last for a continuing period of at least twelve months. *See Reddick v. Chater*, 153 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (citing 42 U.S.C. § 423(d)(2)(A)).

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted. 42 U.S.C. § 423(i); 20 C.F.R. §§ 404.1588–1598. The Commissioner may terminate benefits if:

> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).

The Act has established a seven-step sequential evaluation procedure for determining continuing disability claims for purposes of Title XVI. *See* 20 C.F.R. § 416.994(b)(5). At step one, the ALJ considers whether the impairment or combination of impairments meets or equals any of the Listed Impairments under 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step two, the ALJ assesses whether there has been medical improvement. *Id.* At step three, the ALJ considers whether the improvement is related to the claimant's ability to work and whether the claimant's residual functional capacity ("RFC") has increased. *Id.* At step four, if the ALJ found no medical improvement (step two), or that the improvement was not related to the claimant's ability to work (step three), the ALJ determines whether an exception to medical improvement applies. *Id.* At step five, the ALJ will determine whether the claimant's impairments in combination are severe. *Id.* At step six, the ALJ assesses the claimant's RFC based on the current impairment(s) and whether the claimant is capable of performing his past relevant work. *Id.* At step seven, the ALJ examines whether the claimant has the RFC to perform any other work. *Id.* If the ALJ reaches step seven and finds that the claimant has the RFC to perform other work, the claimant's disability has ended. *Id.* If the claimant cannot perform other work, his disability continues. *Id.*

During step two[3], which is of particular importance to the instant dispute, the ALJ

---

[3] Determination of whether the claimant medically improved occurs at step three under the eight-step framework for Title II claims. The seven-step process for a Title XVI claim, as the one here, is materially identical except for omitting the first step addressing substantial gainful activity. *See generally* 20 C.F.R. §§ 404.1594, 416.994. Therefore, some of these cases cited in this Order refer to the ALJ's medical improvement finding at step three, rather than at step two.

3

determines whether the claimant has experienced medical improvement, which is defined as follows:

> Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s) . . . .

20 C.F.R. § 404.1594(c)(1). Moreover:

> [f]or purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time.

20 C.F.R. 404.1594(b)(7).

## III. THE ALJ'S DECISION

In a decision dated February 12, 2018, the ALJ made the following specific findings:

1. The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated August 15, 2012. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: broken pelvis and low back pain status post motor vehicle accident, depression, and posttraumatic stress disorder. These impairments were found to result in an adverse mental residual functional capacity with marked limits performing complex tasks, maintain[ing] concentration, persistence and pace, performing activities within a schedule, interacting appropriately with others, completing a normal workweek without interruptions from psychological impairment, and adapting.

3. The medical evidence establishes that, since May 23, 2016, the claimant has had the following medically determinable impairments: status post fractured pelvis with recurrent infection in right buttocks and chronic pain, degenerative disc disease, status post left foot sprain, post-concussion syndrome, major depressive disorder, and personality disorder. These are the claimant's current impairments.

4. Since May 23, 2016, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

***

5. Medical improvement occurred on May 23, 2016 (20 CFR 416.994(b)(1)(i)).

\*\*\*

6. Since May 23, 2016, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform less than the full range of light work.

\*\*\*

7. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 416.994(b)(2)(iv)(B)).

\*\*\*

8. Since May 23, 2016, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.994(b)(5)(v)).

\*\*\*

9. Since May 23, 2016, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk two hours of an eight hour workday, sit about six hours of an eight hour workday, and push/pull consistent with lift and carry. He can frequently balance o[r] kneel, and occasionally climb, stoop, crouch and craw. He is capable of simple repetitive tasks, no public interaction, no teamwork [ ] with coworkers, and occasional interaction with supervisors.

\*\*\*

10. The claimant has no past relevant work (20 CFR 416.965).

11. On May 23, 2016, the claimant was a younger individual age 18–49 (20 CFR 416.963).

\*\*\*

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

13. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

14. Since May 23, 2016, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national

5

economy (20 CFR 416.960(c) and 416.966).

\*\*\*

15. The claimant's disability ended on May 23, 2016, and the claimant has not become disabled again since that date (20 CFR 416.994(b)(5)(vii)).

(*Id.* at 15–25.)

## IV. ANALYSIS

Plaintiff alleges the following errors in the Commissioner's final decision: (1) the ALJ improperly weighed the medical evidence; (2) substantial evidence does not support the ALJ's RFC determination; (3) substantial evidence does not support the ALJ's finding of medical improvement; and (4) the ALJ did not meet his duty to develop the record in his questioning of the vocational expert. The Court first addresses the ALJ's finding of medical improvement (at step two) as it precedes the other issues in the seven-step sequential evaluation.

Although plaintiff identifies the ALJ's finding of medical improvement as erroneous, he does not elaborate on the issue, even after the Court invited supplemental briefing. Notwithstanding, plaintiff having raised the issue, the Court cannot overlook the ALJ's discussion, or lack thereof. Here, the ALJ determined that medical improvement occurred, but offered only a vague, conclusory statement to that effect. In making this finding, the ALJ wrote, in full, that:

**Medical improvement occurred on May 23, 2016 (20 CFR 416.994(b)(1)(i)).**

The medical evidence supports a finding that, by May 23, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD.

(AR at 18 (bold in original).) This determination is erroneous for two reasons.

First, the ALJ failed to conduct any comparative analysis in his decision. The ALJ does not cite to even a "scintilla" of evidence to support this finding. *See Smolen*, 80 F.3d at 1279. As explained above and as the Ninth Circuit noted, "medical improvement is defined as 'any decrease in the medical severity' of a recipient's impairment . . . and requires a 'comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)[.]" *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting 20 C.F.R. §§ 404.1594 (b)(1), (c)(1)). The ALJ "failed

to point to a *single* symptom, sign, or laboratory finding at all." *Patricia M. v. Saul*, No. 19-CV-5829 (WHA), 2020 WL 4601629, at *5 (N.D. Cal. Aug. 11, 2020) (remanding where ALJ did not support medical improvement finding; "the ALJ's substantiation at [this step] is wholly conclusory"). "Instead here, the ALJ gestured broadly to 'the medical evidence.'" *Id.*

The Ninth Circuit recently reversed a district court's decision upholding the ALJ's determination in this regard. In *Gallant v. Saul*, 783 F. App'x 688, 690 (9th Cir. 2019), the Court explained:

> Here, the ALJ did not properly analyze whether there was medical improvement in Gallant's preexisting impairments between April 2009 [when she was found disabled] and April 2012 [when she was deemed no longer eligible for benefits]. Nothing in the ALJ's opinion addresses the medical severity of Gallant's impairments in April 2009. Instead, the ALJ concluded there was medical improvement because Gallant suffered only 'minimal limitations' from her mental health impairments between 2009 and 2012 than before. But, as discussed, the ALJ was first required to compare the medical severity of Gallant's traumatic brain injury and mood disorder in 2009 and 2012, *by considering the symptoms, signs, and laboratory findings associated with those impairments in both those years*. . . .

*Id.* (emphasis supplied).

Similarly, here, the ALJ did not cite the medical records reflecting plaintiff's condition at the time of the comparison point decision, much less analyze the medical severity of his impairments in 2012. Indeed, the record does not contain the actual favorable medical decision dated August 15, 2012 with corresponding analysis. Nonetheless, the ALJ somehow made the following finding:

> **At the time of the CPD, the claimant had the following medically determinable impairments: broken pelvis and low back pain status post motor vehicle accident, depression, and posttraumatic stress disorder. These impairments were found to result in an adverse mental residual functional capacity with marked limits performing complex tasks, maintain[ing] concentration, persistence and pace, performing activities within a schedule, interacting appropriately with others, completing a normal workweek without interruptions from psychological impairment, and adapting.**

(AR at 16–17 (bold in original)). No explanation or even citation followed. Thus, it is unclear how the ALJ could have recited plaintiff's medically determinable impairments and residual functional capacity at the time of the comparison point decision when that decision was not

7

identified in the list of exhibits attached to his decision. (*Id.* at 27–30.)[4]

Second, the ALJ's improper finding of medical improvement is not only evident from the discussion itself but also from a review of the administrative record filed in this case, which is virtually devoid of prior medical evidence. Although the Court cannot know for certain what evidence served as the basis for the comparison point decision without it on hand, the record offers a clue. Upon reconsideration of the 2016 determination that plaintiff was no longer disabled, the disability hearing officer's decision dated December 19, 2016 identified at least two specific sources of evidence underlying the CPD: medical records between 2011 and 2012 from the San Francisco County Hospital and a March 8, 2012 orthopedic consultative examination by Dr. Calvin Pon. (AR at 118.) The disability hearing officer proceeded to summarize this evidence while also referring to various progress notes from 2011 as well as a November 6, 2011 psychological evaluation. (*Id.* at 122–23.)

However, this summary, which appears to be the only reference to the prior medical evidence in the record, is unhelpful for three separate reasons. First, the ALJ makes no mention of it. Second, even if he had, "making reference to the DHO's [summary of evidence] . . . cannot substitute for the ALJ's own obligation set forth in 20 C.F.R. §§ 404.1594(b)(1) that *the ALJ compare prior to current medical evidence.*" *Medina v. Colvin*, No. 14-CV-1967 (DMR), 2015 WL 5448498, at *11 (N.D. Cal. Aug. 21, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002) ("The Commissioner also argues that the record before us in adequate because the 1982 medical evidence was summarized in the Hearing Officer's decision. . . . . The difficulty with the Commissioner's position is that these decisions are not evidence. . . . [W]ithout any of the 1982 medical evidence in the record before us, this Court cannot make a reasoned determination as to whether the DHO's summary is accurate or adequate.")). Third, the evidence which the disability hearing officer summarizes does not even appear to be in the administrative record. The Court is

---

[4] The record does contain a 3-page letter dated August 15, 2012, notifying plaintiff that the Administration determined that he was still disabled. (AR at 98–100.) However, none of the enclosures are included as part of the record. Thus, the Court cannot evaluate the basis for the ALJ's finding.

8

unable to locate in the record Dr. Pon's 2012 orthopedic examination report, the 2011 psychological evaluation by an unnamed provider, or the various progress notes discussed.[5]

Therefore, by failing to conduct the required comparative analysis and by lacking any evidence in support, the ALJ's finding that medical improvement occurred cannot stand. Contrary to the defendant's suggestion in supplemental briefing, it is not enough for the ALJ to simply compare the medically determinable impairments and RFC determination assessed at the time of the most recent favorable decision to those at present. *See, e.g.*, *Turpin v. Berryhill*, No. 16-CV-1695 (RFB), 2018 WL 5410926, at *3 (D. Nev. Oct 29, 2018) (remanding where the ALJ "summarily stated [p]laintiff's medically determinable impairments and RFC at the time of the [most recent] favorable decision" without conducing a comparative analysis). "Conclusory language that leaves the reader to intuit the ALJ's reasoning does not clear this low evidentiary hurdle. The ALJ did not ground his finding of medical improvement in substantial evidence and thus failed to conduct a comparative analysis. This legal error merits remand." *Patricia M.*, 2020 WL 4601629, at *5.[6]

---

[5] While the record does contain reports of X-rays from 2012 with respect to plaintiff's pelvis, both hips, left foot, and right wrist (AR at 539, 563), the disability hearing officer's summary refers to evidence beyond these reports. In any event, as noted above, the ALJ did not cite any medical evidence with respect to his finding of medical improvement.

[6] *See also Turpin*, 2018 WL 5410926, at *3 ("Absent either (1) a record outlining a prior disability analysis for Plaintiff's favorable medical decision or (2) a renewed analysis of Plaintiff's 2007 [residual functional capacity] supported by substantial evidence, the ALJ lacked a viable reference point to properly conduct step three of the analysis. Without a viable and identified reference point for comparison, the Court finds that the ALJ necessarily could not find and thus failed to find medical improvement supported by substantial evidence."); *Price v. Colvin*, No. 16-CV-08 (BMM), 2016 WL 8678865, at *2 (D. Mont. Nov. 22, 2016) ("The ALJ failed to compare, however, the current severity of Mr. Price's renal function impairments with the severity of his impairments when he was deemed disabled on December 22, 2003. The ALJ committed legal error by failing to perform this comparison as required by 20 C.F.R. § 404.1594(b)(7)."); *Zutphen v. Colvin*, No. 15-CV-2429 (SI), 2016 WL 5358589, at *6 (N.D. Cal. Sept. 26, 2016) ("The Court finds that the ALJ committed legal error at step three in several ways. Most importantly, the ALJ's decision cited to no medical evidence that pre-dated the October 2006 CPD."); *Newmiller v. Colvin*, No. 15-CV-0139 (FFM), 2016 WL 3034670, at *4 (C.D. Cal. May 27, 2016) ("Here, the ALJ failed to adequately compare current evidence of Plaintiff's impairments with the evidence of Plaintiff's impairments that existed at the time of the CPD."); *Hryzhuk v. Colvin*, No. 14-CV-2561 (EFB), 2016 WL 1162697, at *3 (E.D. Cal. Mar. 24, 2016) ("[T]he medical records from the time

9

This error is not harmless because "an ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence. A termination decision is not 'legally proper and supported by substantial evidence when the CPD evidence is absent from the record.'" *Medina*, 2015 WL 5448498, at *12 (quoting *Spratt v. Colvin*, No. 13-CV-299 (TDD), 2016 WL 2153933, at *5 (W.D. Okla. May 20, 2014)); *see also Newmiller*, 2016 WL 3034670, at *5 ("The error is compounded because the ALJ proceeded with the sequential analysis even though a proper finding of medical improvement is required to continue to [the next step]."). "'In the absence of the early medical records, the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that [a claimant's current] condition represents an improvement.'" *Medina*, 2015 WL 5448498, at *12 (quoting *Veino*, 312 F.3d at 587).

Accordingly, this matter is remanded for further development or review by the ALJ consistent with the regulations and findings of medical improvement.[7] Because a proper finding

---

of the CPD should have been included in the administrative record in this case. Since such evidence was not included in the administrative record, the Commissioner has failed to demonstrate that medical improvement occurred and the matter must therefore be remanded for further consideration."); *Medina*, 2015 WL 5448498, at *11 ("[T]he plain language of 20 C.F.R. §§ 404.1594(b)(1) and (c)(1) requires the ALJ to actually compare prior and subsequent medical records in order to determine the existence of medical improvement. ALJ Laverdure's opinion does not address prior medical evidence. In fact, ALJ Laverdure appears not to have considered prior medical evidence at all, since those prior records do not appear in the administrative record submitted by the Commission to this court.").

[7] The Court notes that the agency previously lost plaintiff's records underlying his initial disability determination. (AR at 122.) Therefore, medical improvement was not formally considered for the period between September 14, 2007 (the initial disability determination) and August 15, 2012 (the most recent disability determination). (*Id.*) In light of the disability hearing officer's discussion of the evidence underlying the August 15, 2012 decision, the Court assumes that this more recent set of records was not also lost.

However, "[t]o the extent such records are not available, the ALJ should have conducted the initial disability analysis anew based on medical evidence of [p]laintiff's condition as of [2012] to properly compare [p]laintiff's past RFC to his current RFC." *Turpin*, 2018 WL 5410926, at *3. The loss of the claimant's records does not discharge the ALJ's duty to determine whether medical improvement has occurred as required by 20 C.F.R. § 404.1594(b)(7). The fact

10

of medical improvement is required to continue with the sequential evaluation, the Court does not reach the additional arguments raised by plaintiff. *See*, *e.g.*, *Hryzhuk*, 2016 WL 1162697, at *4 n.2; *Medina*, 2015 WK 5448498, at *12 n.6; *Tucker*, 2015 WL 1240001, at *5 n.3; *Lee*, 2012 WL 928741, at *7.

## V. CONCLUSION

For the foregoing reasons, the ALJ's finding that plaintiff experienced medical improvement is both legally erroneous for lacking a comparative analysis and unsupported by substantial evidence. Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of plaintiff.

This Order terminates the Docket Numbers 23 and 36.

**IT IS SO ORDERED.**

Dated: July 14, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

that claimants who are found to be disabled are not entitled to a presumption of a continuing disability, *see Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020), also does not relieve the ALJ of his obligation.